JAMES KEAVY and another *vs.* WILLIAM THUETT and another.

October 26, 1891.

Bill of Exchange—Written Promise to Accept—Evidence of Custom to Explain Term "Car-Load."—Defendants, dealers in live-stock at a certain point in this state, wired plaintiffs, who were in the banking business about 100 miles distant, on May 17, 1890: "Will honor W. Jones' $500 draft car-load steers, bill lading attached." On May 20th Jones presented a draft, with bill of lading attached, and received the amount of money specified. *Held*, in an action upon said draft, that the defendants could not be permitted to show what would be understood among dealers in and shippers and carriers of cattle by the use of the term "car-load," as found in the telegram, and also that the animals shipped to defendants did not in weight constitute a "car-load," according to the understanding and custom existing among such dealers, shippers, and carriers.

Same—Verdict—Evidence.—*Held, further*, that the verdict was fully sustained by the testimony.

Appeal by defendants from an order of the district court for Ramsey county, *Cornish*, J., presiding, refusing a new trial after verdict of $89.51 for plaintiffs.

*S. L. Pierce,* for appellants.

*McLaughlin & Morrison*, for respondents.

COLLINS, J.    The plaintiffs in this action were engaged in the banking business at Payneville, in this state, while defendants were dealing in live-stock at South St. Paul, about 100 miles distant. May 17, 1890, the latter wired the former as follows: "Will honor W. Jones' $500 draft car-load steers, bill lading attached." May 20th, on the strength of the telegram, plaintiffs cashed a draft upon defendants, made at the bank by the person named, and in the usual form, for the sum specified, to which draft was attached a bill of lading, in which the articles shipped to defendants were described as "30 head stock cattle, weight 20,000 pounds." The cattle were received by defendants on May 21st, but payment of the draft was refused on the grounds—we gather from the record—that it was not made and presented to plaintiffs within a reasonable time after the reception of the message from defendants; that there was not a full car-load of cattle; and that some of the animals were "stags," instead of steers.    Subsequently the defendants forwarded to plaintiffs, under Jones's direction, they claim, the greater portion of the amount of the draft, which was duly credited.    In this action, which was brought to recover the balance, plaintiffs had a verdict, and the appeal is from an order denying a new trial.

The appellants' assignments of error are wholly without merit. The first goes to the refusal of the trial court to allow them to show what would be understood among dealers in and shippers and carriers of cattle by the use of the term "car-load" in the expression "car-load steers," found in the telegram; and also that the 30 animals shipped to defendants did not in weight constitute a "car-load," according to the understanding or custom existing among such dealers, shippers, and carriers.    The defendants did not attempt by means of these offers to show an understanding or custom as to the use of the terms so well established and so notorious that the plaintiffs ought to have known them, and, perhaps, as a consequence,

bound thereby; nor did they propose to show a special understanding or custom in reference to the terms in existence among persons engaged in a different line of business, of which plaintiffs had knowledge. The testimony might have been admissible had a controversy arisen between Jones and these defendants, or between either of the parties just mentioned and the common carrier. It might well be inferred in such an action that the parties dealt and contracted with reference to prevailing usages and customs, but no such inference can be possible as between the parties hereto.

For the purpose of sustaining their claim that the draft was not presented within a reasonable time, and hence should not have been honored by plaintiffs, the defendants offered testimony as to another custom existing among dealers in live-stock, and the second assignment of error is as to the refusal of the trial court to receive this testimony. Several reasons might be stated why there was no error in this ruling, but that given when considering the first assignment seems sufficient. The plaintiffs were not dealers in live-stock, a fact which seems to have been overlooked by counsel when undertaking to show an established custom existing among that class of business men.

Through his third assignment of error appellants' counsel attempts to assail portions of the charge to the jury, to which he took exceptions, nine in number. As he has omitted to point out in his brief wherein the court erred, it is not incumbent upon us to discuss and dispose of these exceptions in detail. On reading the charge in full, we are unable to discover error of which appellants can complain.

Lastly, it is contended by the defendants that the verdict was not justified by the evidence. From our examination of the testimony we can say that a result different from that reached by the jury ought not to have been expected, and that there was an abundance of testimony in support of the verdict. The telegram on which plaintiffs acted contained no restriction as to time, and the draft was cashed within three days. In the bill of lading the animals shipped were described as "stock cattle," and nothing was said as to there being a car-load; but it was shown upon the trial that steers were included in the term used, that all of those in question were steers,

and that there was a car-load. The testimony clearly established the fact that all of the conditions found in the telegram had been complied with when the draft was paid.

Order affirmed.